SNOW and others *vs.* THE COLUMBIAN INSURANCE COMPANY.

Where a policy of insurance upon a vessel contained a warranty not to use any ports in the British North American provinces, except between the 15th of May and 15th of August; *Held* that the warranty was broken by sailing on a voyage from Boston to a prohibited port, on the 24th of September, when the vessel was lost before reaching the port. LEONARD, J. dissented.

A fair construction of such a contract would seem to require that the prohibition to use certain ports was intended to guard against the dangers incurred in reaching them; and where the sole object of a voyage was to do an act forbidden by the policy, the insurer should not be held liable for any loss connected therewith. *Per* INGRAHAM, J.

THE defendants insured the schooner Caspian for one year, from 9th of September, 1864. The policy contained a warranty not to use ports in the British North American provinces, except between the 15th day of May and 15th day of August. On the 20th September, 1864, the schooner sailed from Boston, bound for Lingan, in Cape Breton, Nova Scotia, one of the British North American provinces, for a cargo of coals. On the 24th September, before reaching Lingan, the vessel was wrecked on the coast, near Louisberg, about fifty miles from Lingan. The defendants moved for a nonsuit, which was denied, and the plaintiffs recovered a verdict. The defendants' counsel excepted, and the court suspended judgment, and directed the exceptions to be heard at general term.

*R. H. Huntley,* for the plaintiffs. I. The policy covered the vessel for the whole period and term insured, including

the time in question.   The vessel was restricted from "using ports in the British North American provinces, except between May and August."   The loss was in the open sea, by sea perils, and not in any of the excluded ports, and the grounds of exemption claimed must rest on the proposition, that a voyage commenced for one of the excepted ports is equally excluded with a loss *at the port.*

Now, in the construction of the policy, it is to be remembered that this was a *time* policy, embracing the sea risks of voyages from or to any places, and restricted only as its terms specified.   As these terms are the language chosen by the insurers, they cannot be extended in their favor by any looseness or ambiguity of expression.   The insurers have expressed themselves with great minuteness, using apt expressions adapted to every class of exclusion.   Thus—the vessel might not " *use ports* on the *continent* of Europe north of Hamburg," but sailing in the open sea, even north of Hamburg, or to a port on an island, was not precluded.   So she should not go east of Navarino—thus interdicting the *region* itself without regard to *place*, whether in port or at sea, but covering a voyage, even if intended to a more eastern port, before reaching the meridian of that port.   So, too, *ports* on the *continent* of Europe, north of Antwerp, between November 1st and March 1st, while it limited the *time*, left other *ports* in the *islands* of Europe free, although within the latitude.   So, too, the West India *Islands* are excluded, without reference to *ports.*   Then, again, in Texas the exclusion applies to *places* as well as *ports*, showing that the exclusion in this particular was not merely of ports but of *places ;* embracing a wider range, when intended to be made. So, too, in reference to the Gulf of Mexico, the exclusion was to apply to *foreign ports* and *places*, leaving our own ports not precluded.   So, too, *places* over Ocracocke bar were precluded, although ports in the same latitude are not prohibited. Indeed, it cannot be denied that the policy shows a clear apprehension of the various and specific differences and shades

of difference of risks ; and when it does not, by specific terms, exclude a risk, it must be deemed to leave the general indemnity of the policy unrestricted.

It cannot be said that the exclusion in this policy is of any particular voyage, designated by ports of departure or destination ; for, not only is it a policy having no reference to ports of departure, but its reference to ports of destination is, that such ports are not to be *used*, leaving the ocean otherwise free — covering the vessel while sailing on the high sea, wherever the general words of the policy admit, but simply interdicting the use of *ports*, which cannot be said to be *used* until they are reached. It is not proper to suppose what intentions might have been to exclude the risk of a voyage, had the parties been aware of the necessity for it ; we are limited to what they have actually done, and by the ordinary rules of construction, they must be limited to the words they have actually used.

It cannot be said that the vessel was *using* a port of the British provinces when she was lost ; and that the underwriters, therefore, are liable. (1 *Duer on Ins.* 16, § 15. *Teaton* v. *Fry*, 5 *Cranch*, 335. *Palmer* v. *The Warren Ins. Co.*, 1 *Story*, 362. *Notman* v. *The Anchor Ins. Co.*, 4 *J. Scott, N. S.* 470.)

II. Manifestly, a mere prohibition to use certain ports cannot be violated, except by using the ports themselves. Sailing toward them, by them, or near them, is not using them. Even a deliberate intention to use them, should it be found expedient to do so, and thereby to relinquish thenceforth all protection from the insurance, would not constitute a breach of such prohibition in a time policy like this, having no reference to particular trades or voyages. (*Middlewood* v. *Blakes*, 7 *T. R.* 162, *opinion of Lawrence, J.* *Tasker* v. *Cunningham*, 1 *Bligh's P. C.* 99.)

Much less should such an intention, formed by the master in ignorance of the restriction, be so regarded. A prohibition of voyages or passages, to particular ports, is much more com-

prehensive than a prohibition to use such ports. One under-writer might insure a vessel generally on time, excepting the use of a particular port, and another might thereupon insure whilst using such port. In such a case, the respective termini of the two risks would be clearly defined ; there would not be a double insurance at any point of time ; and, taken together, the two policies would afford a complete protection to the ship-owner, whilst engaged in trade with the port referred to.

It can hardly be supposed that a departure by the schooner from Galveston, on May 14th, 1865, bound on a voyage to Lingan, would ever be relied upon as a discharge by the underwriters. In such a case, the vessel could not, by any possibility, reach the entrance to the latter port so as to use it within the prohibited period, or even become exposed, at any time during the prohibited period, to the peculiar dangers resulting from the fogs, ice and winds, which then prevail along the coast of the British North American provinces. The voyage would not be within the letter of the prohibition, nor would it be within any presumable motive or purpose of the underwriter in imposing it.

III. Unless voyages or passages to the British North American ports are prohibited, by the direct force and effect of the words employed, there is no sufficient ground for inferring, from the reason of the thing, a prohibition against *sailing near them in going along that coast.* A voyage from Eastport, in Maine, to Scotland, to the Orkneys, or even to Iceland, is not prohibited at any season.

I am not aware that it is a fixed and uniform rule of navigation, and as such, binding upon the insured, that in voyages from America to Great Britain, or to points north of it, undertaken during the period indicated by this prohibition, vessels should take what is called the Southerly passage. But if such a rule does exist, still, such a voyage as last supposed would, nevertheless, involve considerable exposure to the peculiar dangers of the British North American coast.

Snow *v.* Columbian Insurance Co.

Yet it is not prohibited. For this and other reasons it would seem that, independently of the direct effect of the language employed, no general reason as to the presumable purposes of the restriction, or probable expectations and intentions of either party, should be permitted to influence the construction of this warranty ; as in *Notman* v. *The Anchor Ins. Co.* (4 *J. Scott, N. S.,* 470 ;) and as in 2 *Bing. N. C.* 383 ; 2 *Maule & S.* 111 ; 2 *Taunt.* 423, and a multitude of other cases, the precise import of the words found in the policy furnishes the rule of decision between the parties, there is, in this case, no other reliable guide.

The verdict should be sustained.

*D. D. Field,* for the defendants. I. The warranty against the "use" of ports in the British provinces prohibits voyages to any of those ports. The whole clause relating to the warranty is in these words :

"Warranted not to use ports on the continent of Europe north of Hamburg, nor to go east of Navarino in the Mediterranean during the period insured ; nor ports on the continent of Europe north of Antwerp, between 1st November and 1st March ; nor ports in the British North American provinces, except between the fifteenth day of May and fifteenth day of August ; also, warranted not to use the West India Islands during the months of August and September ; also, warranted not to use ports and places in Texas, except Galveston ; nor foreign ports and places in the Gulf of Mexico ; nor places on or over Ocracoke Bar ; nor any of the West India salt islands ; nor ports or places on the west coast of America north of Benecia, during the period insured ; nor to use Min river ; nor Torres straits."

What is the meaning of the prohibition not to *use* certain ports or places ? Does it mean only that the insured shall not *shelter* or *moor* his vessel in the prohibited port ? A vessel uses a port when she finds shelter and anchorage in it. That is in the strictest sense the *use* which a vessel makes of a

port. This, however, is obviously not the sense of this warranty, for there is no danger in the *shelter*, but in getting to it. The attempt to reach the port must therefore be the thing prohibited. When does this attempt begin? Clearly when the vessel starts for the port. It will not do for the courts to interfere and say there is no danger in the first part of the voyage to the prohibited place, but only in the latter part of it. Parties make their own contracts. They might in the present case have stipulated that the vessel should not actually *enter* certain ports. That might or might not have answered their purpose. If the dreaded danger was from pirates in the harbor, or sea-worms bred there, such a stipulation would have been sufficient. If, however, shoal water made the danger, the stipulation might be against attempting to cross the bar. If it were the dangers of particular latitudes to be guarded against, the language might have been so framed. Instead of this, instead of varying the expression to cover different dangers, one general expression was used, which must have a uniform interpretation, and broad enough to cover all the dangers. The one chosen was "use," and the prohibition against the use of certain ports or places must be so understood as to exclude any movement towards those ports.

If we analyze the warranty, and take it apart, we shall find that certain portions of it must have that interpretation, or else they will be senseless. Thus the warranty "not to use ports on the continent of Europe north of Hamburg," could not be so construed as to permit the vessel to sail all round the Baltic, even to the northwest limit of the Gulf of Bothnia, and yet prohibit her anchoring at Copenhagen. Then the warranty "not to use ports on the continent of Europe north of Antwerp, between 1st of November and 1st of March," must mean that the vessel shall not sail for such ports. Otherwise, she might beat about all winter in the stormiest seas of the north, and yet be forbidden to seek shelter in Bremen or Hamburg. The warranty "not to use the

West India Islands during the months of August and September" was plainly intended to exclude the insured vessels from the region of hurricanes in the worst season.

So in the present case, the warranty "not to use ports in the British North American provinces, except between the 15th day of May and 15th day of August," must have been required because of the danger from ice and storms during the harsher months of the year. This ice and these storms would be, however, less dangerous in port than out of it, and, therefore, that construction would be absurd which would allow a vessel to cruise in these northern latitudes and hover on these rocky coasts, but exclude her entering into the ports. The prohibition to use a particular port means that going to that port should not enter into the plans of the insured. *He is to make no movement with the view of entering it.* Good faith requires this. The insurer should not be subjected to the hazard of attempting to prove that the loss happened in consequence of this plan. The argument should be held conclusive that the vessel might not have been in the place where the loss occurred, but for the scheme intended to end in entering the prohibited port.

The rule as to voyage policies may serve to illustrate the principle which should be applied here. There the beginning of a voyage, intended to terminate at a place different from that mentioned in the policy, makes the voyage a different one, though the lines of the two coincide for the greater part of the distance, and a loss any where cannot be recovered. The *attempt* to enter a prohibited port is begun when the vesel *starts* with the intention of entering that port. The intention with which a voyage is begun, determines its character. To start with the intention of entering a prohibited port, is an attempt to enter that port, and is *using* it, in the sense of the policy.

II. The departure of the vessel in this case for the port of Lingan, its presence upon the coast of Nova Scotia, and its attempt to enter the prohibited port, were each of them

a breach of the express warranty not to use such ports. This exonerates the insurer. It is well settled, that the breach of an express warranty, whether material or not, has this effect. (2 *Pars. on Mar. Law,* 104. *Newcastle Ins. Co.* v. *Macmorran,* 3 *Dow.* 255. *Blackhurst* v. *Cockell,* 3 *T. R.* 360. *De Hahn* v. *Hartley,* 1 *id.* 343. 2 *id.* 186.)

III. The verdict should be set aside, and a new trial ordered.

INGRAHAM, J. The sole question in this case is whether the warranty not to use any ports in the British North American provinces, except between the 15th May and 15th of August, was broken by sailing on a voyage from Boston to a prohibited port on 24th September, when the vessel was lost before reaching the port.

I have to some extent examined this question in *Bearns* v. *The Columbian Ins. Co.,* decided this term,(a) but that case differs from this in the fact that here the loss occurred during the voyage from Boston to the prohibited port, while in the other case the damage happened in going in and out of a port within the terms of the policy.

This was a time policy, and the prohibition was against the use of those ports, and under ordinary circumstances, if the voyage had been from Boston to some port in Europe the same route might have been taken and the vessel would have been covered by the policy. On such a voyage, the prohibition not to use the ports in the British North American provinces would be properly construed to mean that the vessel should not enter these ports, and that a mere intent to enter them would not violate the policy.

In this case, however, it is argued that the whole voyage was undertaken with an express intent to violate the warranty, and that such an intent from the commencement of the voyage led to a route nearer to the shore and exposed the vessel to greater danger, and that the vessel would not have

(a) Ante, p. 445.

been where she was lost, but for the intended plan to enter the prohibited port. Thus in voyage policies, the policy ceases to cover the vessel at the point of divergence for the prohibited port.

The question is not free from difficulty. Ordinarily the term use a port, means to enter it, and until that takes place the port is not used and the warranty is not broken. But where the sole object of a voyage is to use a prohibited port, and in consequence thereof the vessel is wrecked upon the same coast within a short distance of the port intended to be used, the risk is undoubtedly increased, and in a way in which the insurer intended by the warranty to be protected against.

The question in this case has been lately examined in the Court of Appeals of this state in *Stevens* v. *The Commercial Ins. Co.*, (26 *N. Y. Rep.* 397.) There Davies, J. in deciding the case applies to it the rules applicable to voyage policies, and says : " In whatever aspect the case can be considered, it seems to be well settled that after the brig left the port of Laguira (not a prohibited port) to proceed to that of Sisal (which was prohibited) she ceased to be under the protection of the policy, and the underwriters were discharged. It was *entering* on a voyage not covered by the policy."

If this rule is correctly applied to time policies, then the sole object of the voyage in the present case being to enter a prohibited port, after the schooner entered on the voyage to Lingan she ceased to be under the protection of the policy and the plaintiffs cannot recover.

There is another view of this case which ought to have some weight in its decision. The clear intent of the underwriters in this restriction is to guard against the danger which arises from navigating near the coast of the British provinces at certain seasons of the year. That intent is completely frustrated, if the insured can go to a prohibited port, and claim protection in going and returning, and being unprotected only while in the port. It is a fraud on the under-

writers, and as was said by Cowen, J. in *Union Ins. Co.* v. *Tysen*, (3 *Hill*, 118.) "The voyage is undertaken in fraud of the policy."

A fair construction of the contract between these parties would seem to require that the prohibition to use certain ports was intended to guard against the dangers incurred in reaching them ; and where the sole object of a voyage was to do an act forbidden by the policy, the insurer should not be held liable for any loss connected therewith.

The verdict should be set aside and a new trial granted, costs to abide event.

SUTHERLAND, J. concurred.

LEONARD, J. I dissent. The policy was not violated by an intent of the owner to violate it at a future time. It is the actual entry or use of the port that violates the contract.

In the case of *Stevens* v. *The Commercial Ins. Co.*, the warranty was violated by an actual entry of, and an anchorage at Sisal, a prohibited port. I think that case has no application here.

New trial granted.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, Sutherland* and *Ingraham*, Justices.]